45 P.3d 216 (2002)
111 Wash.App. 413
John A. CAMPBELL, Respondent/Cross-Appellant,
v.
BOARD FOR VOLUNTEER FIREFIGHTERS, Appellant/Cross-Respondent.
No. 48209-2-I.
Court of Appeals of Washington, Division 1.
April 29, 2002.
*217 Jerome E. Westby, Assistant Attorney General, Olympia, for Appellant.
John W. Schedler, Snohomish, for Respondent.
SCHINDLER, J.
To be eligible for a pension, a volunteer firefighter must be an "active member" of a fire department as well as a firefighter. Here, the State Board for Volunteer Firefighters denied John Campbell pension credit for the years 1997 and 1998 because during those years Campbell's activities in the department were minimal and mostly unrelated to firefighting. The trial court reversed the Board's decision. We reinstate the Board's decision. The Board's factual findings are supported by the evidence and the Board was correct as a matter of law.

FACTS
Between 1990 and 1996, John Campbell was a volunteer firefighter for the Snohomish County Fire District No. 4. Among other things, he responded to alarms, was an instructor, and a station keeper.
In October of 1996, Campbell asked to be taken off the alarm response rolls in order to eliminate any income from the fire district for social security purposes. He had an agreement with the fire district that he would be exempt from responding to alarms and drills, but that his activities would be sufficient to maintain service credit toward his pension.[1]
After 1996, Campbell's activities significantly decreased. In 1997, Campbell responded to at least one fire alarm in January, but did not respond to any alarms after January. Campbell participated in three other activities that year: a spouse appreciation dinner, an annual hose competition, and an annual banquet. In 1998, Campbell participated in a one day training program and attended a spouse appreciation dinner.
In order to qualify for a pension, a volunteer firefighter must be an "active" member for at least ten years. RCW 41.24.170. Campbell's name was not reported to the State Board for Volunteer Firefighters for pension purposes in 1997 or 1998 and he received no service credit for these two years. As a result, Campbell had service credit for only nine years as a volunteer for the fire district.
*218 The deputy chief of the fire district wrote to the Board explaining that Campbell's name had been inadvertently omitted for the years 1997-1998 and requesting that he be given credit for those years. The Board denied the request. Campbell asked for a hearing. At the hearing in January 2000 the Board took testimony from Campbell, the Deputy Chief and the Chief of the Fire District. The Board entered extensive findings of fact and conclusions of law and again, the Board decided that Campbell's activities were too minimal for Campbell to qualify for service credit for 1997 and 1998.
Campbell appealed to the Snohomish County Superior Court. The trial court reversed the Board's decision but denied Campbell's request for attorney fees. Both parties appeal.

FINDINGS OF FACT
Judicial review of the Board's final order is governed by RCW 34.05, the Washington Administrative Procedure Act (APA). RCW 34.05.010(2); RCW 34.05.570(3). On review of an agency decision, this court sits in the same position as the superior court and applies the standards of the Administrative Procedure Act to the record before the agency. Tapper v. State Employment Security Dep't., 122 Wash.2d 397, 402, 858 P.2d 494 (1993). Review is limited to the administrative record before the agency. RCW 34.05.558. The court must affirm the Board's final order unless Campbell can establish error. RCW 34.05.570(1)(3).
In reviewing the Board's decision, the trial court applied an incorrect standard of review and entered its own findings of fact. The trial court acknowledged that if it were to review the Board's findings of fact for substantial evidence, it would uphold the findings. However, the court concluded that because the issue presented was a mixed question of law and fact, the standard of review was de novo.
The trial court relied on a 1981 decision of this court, Vergeyle v. Employment Security, 28 Wash.App. 399, 623 P.2d 736 (1981), overruled on other grounds by, Davis v. Dep't. of Employment Security, 108 Wash.2d 272, 737 P.2d 1262 (1987), for the proposition that de novo review includes a de novo review of the facts. Vergeyle states that a reviewing court has "inherent and statutory authority to make a de novo review" where there is a mixed question of law and fact. Vergeyle, 28 Wash.App. at 402, 623 P.2d 736 (citing Weyerhaeuser Co. v. Department of Revenue, 16 Wash.App. 112, 115, 553 P.2d 1349 (1976)). Vergeyle relied on Weyerhaeuser for its formulation of this standard of review. A year after Vergeyle was decided, the Supreme Court clarified what is meant by a de novo review of mixed questions of law and fact in Franklin County Sheriff's Office v. Sellers, 97 Wash.2d 317, 329-30, 646 P.2d 113 (1982). The Supreme Court addressed this issue to correct previous appellate decisions (including Weyerhaeuser) that had misconstrued the proper scope of review of mixed questions of law and fact. Franklin, 97 Wash.2d at 329, 646 P.2d 113. The court explained that "we are really referring not to the facts themselves, nor the law governing the situation, but to the law as applied to those facts." Franklin, 97 Wash.2d at 329, 646 P.2d 113. The court held that "it is not the province of the reviewing court to try the facts de novo when presented with a mixed question of law and fact." Franklin, 97 Wash.2d at 330, 646 P.2d 113. The court engaging in a de novo review of an administrative decision, determines whether the facts found by the agency are supported by substantial evidence and then independently determines the law and applies it to those facts. Franklin, 97 Wash.2d at 330, 646 P.2d 113; Pechman v. Employment Security Division, 77 Wash.App. 725, 729, 893 P.2d 677 (1995). Accordingly in this case, the trial court erred by reviewing the facts de novo.
Campbell essentially concedes that substantial evidence is the appropriate standard for reviewing the Board's factual findings, but focuses on the statute's language "evidence that is substantial when viewed in light of the whole record before the court". RCW 34.05.570(3)(e). He argues that because the statute refers to the "whole record" this court should apply the federal formulation of the substantial evidence *219 test under which the court is required to consider any evidence that "fairly detracts" from the evidence in support of the order. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
We are aware of no Washington case that has adopted the federal substantial evidence test. The reference to the "whole" record means that when a party contends an agency decision is not supported by substantial evidence, the appellate court reviews the entire record before the agency. See Public Employees Relations Commission v. City of Vancouver, 107 Wash.App. 694, 703, 33 P.3d 74 (2001). The well-settled test for substantial evidence is "a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order." Callecod v. Wash. State Patrol, 84 Wash.App. 663, 673, 929 P.2d 510 (1997); King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 552-53, 14 P.3d 133 (2000).
Applying this standard, Campbell's challenges to four of the Board's findings fail. The Board found that in the years 1997 and 1998, Campbell did not meet the district's attendance requirements for drills or mandatory alarm responses for volunteer members. In challenging these findings, Campbell points to testimony to the effect that by agreement with the fire district he was not required to meet those requirements. He also points to testimony that the requirements were never enforced. This evidence does not detract from the Board's findings. Regardless of why it was that Campbell did not meet the requirements, or whether other members also failed to meet the requirements, the evidence is still undisputed that Campbell did not, in fact, meet the requirements during 1997 and 1998.
The Board also found that Campbell's activities in 1997 and 1998 would not have met the minimum competency standards during those years. Campbell does not dispute that he did not meet the minimum competency standards during those years. Instead, he argues that he was not required to meet those standards because he had already met the competency standards earlier. But fire district resolution #117 stated that all the fire district personnel were required to meet and "maintain" the standards. Appellant's Ex. AR 29. The fire district chief also specifically testified that he understood Campbell would be exempt from maintaining the minimum competency standards in 1997 and 1998. This evidence supports the Board's finding.
Finally, the Board found that the deputy chief of the fire district did not consider Campbell to be a firefighter in 1997 and 1998. Campbell argues that the finding is unsupported because the deputy chief also testified that he considered Campbell to be an "active member of the volunteers." Appellant's Ex. TR 53. This testimony does not defeat the deputy chief's earlier statement that he did not consider Campbell to be a firefighter at the time.
In conclusion, the challenged factual findings of the Board are supported by substantial evidence.[2]

CONCLUSIONS OF LAW
The Board also challenges the trial court's legal conclusions. The appellate court reviews conclusions of law de novo. Tapper, 122 Wash.2d at 402-03, 858 P.2d 494. This court gives substantial weight to the agency's interpretation of the law when the subject area falls within the agency's area of expertise. Wilson v. Employment Sec. Dep't of State, 87 Wash.App. 197, 201-02, 940 P.2d 269 (1997); see also RCW 34.05.570(3); Towle v. Dep't of Fish & Wildlife, 94 Wash. App. 196, 971 P.2d 591 (1999). RCW 41.24 establishes pension fund for volunteer firefighters. Under RCW 41.24.170 a volunteer is eligible to receive a pension if he or she is a "participant" who has been "a member and served honorably for a period of ten years or more as an active member in any capacity, of any regularly organized fire department". The Board is authorized to determine whether volunteer members of fire *220 departments are eligible for pensions created by the fund. City of Kennewick v. Bd. of Volunteer Firefighters, 85 Wash.App. 366, 369, 933 P.2d 423 (1997); RCW 41.24.290.
To qualify for a pension under the statute an individual must be a "participant" and an "active member" of a fire department. For purposes of the pension provision, the statute defines "participant" as a "fire fighter". RCW 41.24-010(10)(b). Therefore, to be eligible for a pension, a volunteer must be a "firefighter" and also an "active member" of the department. "Firefighter" is a self-defining term under the statute. RCW 41.24.010(3). The statute does not define "active member".
The Board looked to the statute's definition of the term "performance of duty" for guidance. Under the statute, "performance of duty" and "performance of service":
"shall be construed to mean and include any work in and about company headquarters, any fire station, any law enforcement office or precinct, or any other place under the direction or general orders of the chief or other officer having authority to order such member to perform such work; responding to, working at or returning from an alarm of fire, emergency call, or law enforcement duties; drill or training; or any work performed of an emergency nature in accordance with the rules and regulations of the fire department or local law enforcement agency."
RCW 41.24.010(5).
The parties devote much of their argument to the issue of whether a volunteer must perform any or all of the listed activities to be engaged in the performance of duty or service.[3] However, what performance of duty entails is only a peripheral issue here because the relevant terms of the pension provision are "active member," "participant," and "firefighter".
The Board did not decide, and nor do we, that a volunteer firefighter must engage in all activities listed in the performance of duty section in order to be an "active member" of the fire department. Because "active member" and "firefighter" are undefined terms, and because this court gives substantial weight to an agency's interpretation of the law within its area of expertise, we conclude that the Board did not err in concluding that Campbell's activities were insufficient during 1997-1998 to qualify as a "firefighter" or "active member" of the department during those years.
In reaching its conclusion, the Board also relied on the Kennewick case. In Kennewick, several firefighters challenged the Board's decision denying them service credit for a period of years. During the challenged period, the firefighters continued to pay annual dues to the firefighters' pension fund, but were on inactive status and "no longer performed any firefighting duties." Kennewick, 85 Wash.App. at 368, 933 P.2d 423. They did not respond to alarms, participate in drills or training. On appeal, this court upheld the Board's decision noting that: "[I]t is inconceivable that the Legislature intended to create a fire fighters' pension fund for individuals who, apart from paying an annual fee, engaged in no activity relating to fire fighting." Kennewick, 85 Wash.App. at 370, 933 P.2d 423. Here, the Board concluded that Campbell was likewise, "not actively engaged in firefighting activity" and "was not a firefighter" during 1997 and 1998. CP 56.
The Board also concluded that after Kennewick, the earlier Board decision in In Re McFate and Wiley, Decision of the State Board of Volunteer Firefighters, (July 15, 1994) was "no longer an accurate statement of law." CP 56. Alternatively, the Board concluded that even if the McFate and Wiley decision applied, Campbell would still be ineligible for service credit because the firefighters' activities in McFate and Wiley were more significant and "more related to firefighting" than Campbell's activities. CP 56.
*221 In reversing the Board's decision denying Campbell service credit, the trial court concluded that McFate and Wiley was applicable, and that Kennewick was "factually distinguishable". CP 6.
In McFate and Wiley, the volunteers ceased responding to fires, but they engaged in other related firefighting activities, such as assisting at fire scenes, transporting district equipment purchased in other states, and repairing district vehicles. The Board reasoned that McFate and Wiley's activities were performed at the direction of the fire chief and therefore they were entitled to service credit.
We agree with the Board's conclusion that Kennewick calls into question the analysis in McFate and Wiley because Kennewick makes it clear that the focus is on whether the activities are related to firefighting.[4] Thus, there is a threshold requirement that a member must be a firefighter.
The facts of this case are closer to Kennewick than McFate and Wiley. In Finding of fact number 9, unchallenged on appeal, the Board concluded that the spouse appreciation dinners and the annual banquets were primarily social functions. CP 54. Thus, aside from social activities, the record demonstrates that in 1997, Campbell responded to one alarm and was an evaluator for a hose competition. In 1998, he participated in one training session.[5] In 1997 and 1998 Campbell's activities related to firefighting were minor, consisting of three isolated actions. Under these facts, the Board did not err in concluding that Campbell did not engage in sufficient activities related to firefighting to be eligible for pension credit under Kennewick.

ATTORNEY FEES
Campbell appeals the trial court's denial of his request for attorney fees. Because we affirm the Board's disposition, Campbell is not the prevailing party, and he is not entitled to fees under RCW 4.84.350.
Reversed.
BAKER and APPELWICK, JJ., concur.
NOTES
[1] The Board was not a party to Campbell's agreement with the fire district.
[2] Campbell did not challenge findings 1-11. These are verities on appeal. Standing Rock Homeowners Ass'n v. Misich, 106 Wash.App. 231, 241, 23 P.3d 520, rev. denied, 145 Wash.2d 1008, 37 P.3d 290 (2001).
[3] Campbell contends that a volunteer performs duty by engaging in any of the listed activities. The Board counters that performance of duty requires performance of all the listed activities. Campbell's interpretation appears to be correct, because the final semicolon is followed by an" or. And this interpretation makes sense in the context of how the phrase is used in the statute. A firefighter is eligible for death or disability benefits if he or she is injured or killed while engaged in the performance of duty. See RCW 41.24.150; RCW 41.24.160.
[4] However, under the standard of Kennewick, the result in McFate and Wiley would arguably be the same because the activities were related to firefighting.
[5] Although the trial court entered a finding that he was an "instructor" for the EVAP train the trainer program, Campbell testified that he "went through" that training. TR 19.